**CCI Communications, Inc. v. Richard F. Sassa Insurance Agency**

464

*Harry P. Begier, Jr.*, for plaintiff.

*Christopher L. Troy* and *Jonathan R. MacBride*, for defendant Employers Fire Ins. Co.

*Joseph P. Connor, III*, for additional defendant Richard F. Sassa Ins. Agency, Inc.

SNITE, *J.*, August 30, 2013—On July 18, 2013, this

court ruled on a motion for summary judgment in the above captioned case. By order dated July 19, 2013, this court granted the summary judgment motion of additional defendant, The Richard F. Sassa Insurance Agency, Inc. On July 22, 2013, Plaintiff filed a motion for reconsideration of the court's July 18, 2013 order. On August 5, 2013, this court denied plaintiff's motion for reconsideration.

On August 16, 2013 this court received notice that plaintiff had filed an appeal to the Superior Court of Pennsylvania from this court's July 18, 2013 order.

## DISCUSSION

This court adopts, as its opinion on appeal, the order and opinion dated July 18, 2013, which sets forth this court's reasoning, as well as this court's order dated August 2, 2013. These opinions are incorporated herein by reference. This court asks that the July 18, 2013 order be affirmed.

## ORDER

And now, this 2nd day of August, 2013, upon consideration of plaintiff's motion for reconsideration of the court's order of July 18, 2013, and additional defendant's, The Richard F. Sassa Insurance Agency, Inc. ("Sassa"), response thereto, it is hereby ordered that said motion is denied.[1]

---

1. The court agrees with plaintiff that there may remain a question whether Sassa was negligent in obtaining the insurance that plaintiff allegedly wanted secured. However, the precise question presented at summary judgment is whether plaintiff knew or should have known that there existed a cause of action concerning adequate coverage on or before August 27, 2008 (two years before the joinder complaint was filed). Plaintiff did not show that the discovery rule should have tolled the statute of limitations until August 27, 2008. To the contrary, a reasonable investigation would reveal that actionable coverage issues existed by the end of 2007.

## ORDER

And now, this 18th day of July, 2013, upon consideration of additional defendant's, The Richard F. Sassa Insurance Agency, Inc., motion for summary judgment, and all responses thereto, it is hereby ordered that said motion is granted. Plaintiff's complaint is dismissed, in accordance with the accompanying memorandum opinion.

## MEMORANDUM OPINION

Before the court is additional defendant's, The Richard F. Sassa Insurance Agency ("Sassa"), motion for summary judgment, on the grounds that the statute of limitations for any negligence claim plaintiff, CCI Communications, Inc. ("CCI"), may have against Sassa has expired.

## PROCEDURAL HISTORY

On May 19, 2010, CCI filed its Third Amended Complaint against The Employers' Fire Insurance Company ("Employers"), for breach of contract, reformation, and bad faith. CCI's complaint arises out of a fire loss that occurred on its premises on August 23, 2007.[2]

On August 27, 2010, Employers filed a joinder complaint against additional defendant Sassa, for a claim of negligence.

On October 15, 2010, Sassa filed its answer with new matter and cross-claim to Employer's joinder complaint.

On October 12, 2011, Sassa filed a motion for summary judgment.[3] At the time of filing, CCI had settled all claims

---

2. The original complaint was filed On February 17, 2010; the first amended complaint was filed March 1, 2010; the second amended complaint was filed April 7, 2010.
3. Control No. 11101452.

with Employers, as CCI's counsel informed the court at the pretrial conference on August 25, 2011.

On October 31, 2011, Judge Bernstein granted Sassa's motion for summary judgment, on the basis that any direct claim against Sassa was barred based on the statute of limitations, and the discovery rule did not apply. The court reasoned: "Plaintiff's first-party insurance claim became actionable on August 23, 2007, the date the fire occurred. Since no claim was asserted against Sassa until August 27, 2010, any direct claim is now barred as a matter of law."[4]

On November 29, 2011, CCI appealed from the October 31, 2011 order to the Superior Court.

On January 15, 2013, the Superior Court reversed the order granting summary judgment in favor of Sassa, and remanded the case. The Superior Court held that "the factual information necessary to evidence the triggering of the applicable statute of limitations against Sassa is not contained in the present record."[5] The court further noted in a footnote:

> We in no way wish to suggest that this case may not yet be eligible for summary judgment relief. We hold only that the present record does not establish the commencement date for the applicable statute. Said date may be established by additional discovery, including production of evidence of the date of the denial of coverage decision by the insurance company. Should that date fall more than two years prior to the joinder of SASSA in this litigation, we would agree with the trial

4. J. Bernstein op., Oct. 31, 2011, p.2. It should be noted that plaintiff, itself, never asserted a cause of action in negligence against Sassa.
5. *CCI Communications, Inc. v. Richard F. Sassa Insurance Agency, Inc.*, No. 3253 EDA 2011 (Nov. 20, 2012), mem. per curiam, p.6-7 ("Superior Ct. op.")

468

judge that summary judgment is appropriate.[6]

On remand, additional discovery was taken.

On April 11, 2013, Sassa filed the current motion for summary judgment. Plaintiff filed its response in opposition thereto on May 13, 2013. On May 23, 2013, Sassa filed a reply brief. On June 6, 2013, CCI filed a sur-reply brief.

The case was transferred from the court's arbitration program back to the commerce court on June 19, 2013.

## FACTUAL HISTORY

CCI is a video production company that provides TV production services, such as studio production, on-site mobile production using trucks, and video editing utilizing audio/visual equipment. The programming includes the Phillies Pre-Game Show.

Employers issued policy number 753-01-73-30-0001 to CCI, effective July 1, 2007 to July 1, 2008, for damage from direct physical loss to real and business property of CCI, subject to the terms and conditions as set forth in the declaration pages of the policy. Schedule 8 from the Auto Declarations of the insurance policy shows $300,000 of coverage for auto no. 2, a 1993 Isuzu Truck that originally contained video equipment. A change was effective on July 17, 2007 deleting the $300,000 coverage of the Isuzu Truck and adding $300,000 coverage for the 2006 Dodge Van (as set forth in Policy Change 5). In its complaint, CCI states: "The reason for the shifting of coverage is that the video equipment had been removed from the Truck, and temporarily stored in Building II until it could be installed

_____

6. *Id.* at 8 n.6.

in the Van."[7]

On August 23, 2007, a fire occurred at CCI's Building II, destroying the building and business personal property located therein including the video equipment that formerly had been in the truck. Employers paid CCI for destruction of the building and partially paid for the business personal property. Employers also paid the *business loss income* directly resulting from the *destruction of Building II* and partially paid for the *destruction of the video equipment*, but paid nothing for the *business income loss* resulting from the *destruction of the video equipment.*[8]

On February 17, 2010, CCI initiated suit against Employers for the unpaid portion of the video equipment loss and also for the business income loss resulting from the destruction of the video equipment. Kenneth Selinger ("Selinger"), president of CCI, testified at his original deposition that he asked John Geraldi ("Geraldi"), president of Sassa, to procure business income loss coverage on CCI's video equipment. Selinger further testified that he communicated to Geraldi the purpose of the $300,000 in Schedule 8 of the auto policy was to insure any loss arising out of damage to the video equipment in the truck including loss of income.[9]

At the time of the fire, the video equipment was not in the truck, but stored in CCI's Building II. As a result, Employers calculated CCI's losses under *Building II's property and business income coverages* rather than the *auto policy* that contained the $300,000 limit of insurance.[10]

---

7. Third am. compl. ¶5.
8. CCI Resp. to Sassa mot. summ. j., p. 2 (citing Superior Ct. op.).
9. CCI Resp. to Sassa mot. summ. j., p. 2-3.
10. There is no evidence that the van suffered any loss during the building fire.

Building II and another provision of the policy did not have enough coverage to fully pay the video equipment damage, nor any of CCI's business income loss due to the loss of use of the video equipment. The remainder of the policy did not have any business income coverage that would be applicable. As a result, CCI was not paid for the business income loss to the video equipment by Employers and only partially paid for the damage to the video equipment.[11]

Initially CCI's suit was to reform Employers' policy to provide that the video equipment and the resultant business loss income was covered under the $300,000 in the auto policy in Schedule 8. CCI's third amended complaint alleged:

16. CCI communicated to CCI's broker, John R. Geraldi of the Richard F. Sassa Insurance Agency, Inc. (hereinafter called "SASSA"), the purpose of the $300,000 in Schedule 8 [See EXHIBIT "P-5"] was to insure any loss arising out of damage to the equipment in the truck including loss of income.

17. Upon belief, SASSA communicated the purpose of the $300,000 coverage on the truck to [EMPLOYERS via a separate nonparty entity].[12]

On August 12, 2010, Employers responded to the foregoing averments by stating it had no knowledge of the averments in paragraphs 16 and 17. On August 27, 2010, Employers filed a joinder complaint against Sassa, alleging that Sassa was solely liable to CCI.[13] On October 10, 2010, Sassa denied the foregoing averments in

_____
11. CCI Resp. to Sassa mot. summ. j., p.3.
12. *Id.* (citing CCI third am. compl. ¶16-17).
13. Employers' joinder compl. ¶27.

paragraphs 16 and 17 in its answer to Employers' joinder complaint.

CCI settled its reformation claim against Employers for partial payment on the video equipment loss arising from the damage to the video equipment.[14] Apparently CCI concluded that Employers' denial and Sassa's subsequent similar denial to paragraphs 16 and 17, and discovery which apparently confirmed the denials that the coverage was not requested, had significantly impaired its cause of action against Employers.

When CCI settled its claims against Employers, it left outstanding only the sole liability claim in Employers' joinder complaint against Sassa. Sassa filed a motion for summary judgment against CCI on the grounds that the two year statute of limitations had run on CCI's claim under the sole liability claim, and CCI's claim against Sassa was thus barred. The trial court entered an order granting Sassa's motion for summary judgment on the statute of limitations defense.[15] CCI filed an appeal from that order. In reversing, the Superior Court explained:

> ...we are compelled to agree with CCI that, granting it the benefit of all doubt as the nonmoving party, it may, at the time of the fire, have had a good faith basis upon which to believe that it had purchased the appropriate insurance. Thus, the mere occurrence of an event for which insurance coverage is sought, was not evidence that claimant was aware that the sought after coverage was not in place. While we are certainly mindful that the claimant's good faith basis would obviously be undercut by notice of the denial of coverage from the insurer, we

14. CCI Resp. to sassa mot. summ. j., p.4.
15. Superior Ct. op. p.3.

do not find that critical information — specifically, the date of such notice of denial — apparent on this record. Thus, we are compelled to agree with CCI that the factual information necessary to evidence the triggering of the applicable statute of limitations against SASSA is not contained the present record. Therefore, we must reverse the grant of summary judgment and remand this case for further proceedings.[16]

Upon remand, Sassa conducted additional discovery to further develop the factual basis for determination of when CCI knew or should have known that it did not have the business interruption coverage it allegedly sought and/or requested.[17] Sassa now assets that CCI knew, within days of the fire at the latest, exactly what insurance coverage it had, and that it only had limited business interruption coverage; i.e., for lost rental income from the building, which was undisputedly paid by Employers.[18]

The issue at hand is what CCI knew, or should have known, of its cause of action in negligence against Sassa before August 27, 2008-two years before the joinder complaint was filed-through exercising reasonable diligence.

## DISCUSSION

16. Superior Ct. op., p. 7-8.
17. Sassa mot. summ. j. ¶16.
18. Sassa mot. summ. j. ¶17. It should be noted that the Superior Court implied that "the date of the denial of coverage decision by the Insurance company" would be important; however, there was not *denial* of coverage here. Instead, CCI argued that the loss had been adjusted *improperly* under the property portion of the policy, rather than under the auto portion of the policy whose proceeds had not been exhausted. CCI third am. compl. ¶9. Neither party has addressed the Superior Court's concerns over a "denial date." Because payment was made, but there was an alleged problem with the type of coverage, neither party appears to assert a "date of denial." as being critical.

In its third amended complaint, CCI claimed that Employers failed to fully compensate CCI for fire loss that caused damage to CCI's video equipment. and also failed to compensate it for the "business interruption" losses resulting from the loss and damage to the video equipment. The issue here is whether the discovery rule may have tolled the statute of limitations for any negligence claim CCI may have against additional defendant Sassa for failing to place the type of coverage that CCI claims it wanted.

The Superior Court noted that the commencement date for the statute of limitations on a claim against Sassa was a factual issue that remained to be developed. Accordingly, CCI's president, Selinger, was re-deposed on March 4, 2013, specifically as to the factual issues that might affect the commencement date for the running of the statute of limitations.[19]

The statute of limitations for negligence in actions in Pennsylvania is two years. 42 P.S. §5524. The fire occurred on August 23, 2007. Sassa was joined on August 27, 2010. Accordingly, the statute of limitations for a claim against Sassa would have to have been tolled until August 27, 2008.

CCI claims that, under the "discovery rule," the statute should not begin running until October 15, 2010, when Sassa filed its answer with new matter and cross-claims to Employer's joinder complaint. In its answer, Sassa denied the averments made that CCI communicated to Geraldi (of Sassa) that the purpose of the $300,000 in schedule 8 of the policy was to insure any loss arising out of damage

19. Sassa mot. summ. j. ¶18.

474

to the equipment truck including loss of income.[20]

At summary judgment, a defendant must prove that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[21] However, here, CCI is invoking the discovery rule,[22] which involves the burden being on the plaintiff. The "discovery rule" is an exception to the requirement that a plaintiff must file within the statutory period.[23]

The discovery rule provides that where the existence of the injury is not known to the complaining party, and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.[24] The rule is an equitable one, which excludes the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury.[25] Thus, if the injury and cause thereof are reasonably ascertainable within the (two-year) statutory period, the discovery rule does not apply and no tolling occurs.[26]

Plaintiffs seeking to invoke the discovery rule bear the burden to establish the inability to learn of the injury despite exercising *reasonable diligence*. The Third Circuit explained:

---

20. Sassa ans. to joinder comp. ¶16-17.
21. *Rausch v. Mike-Meyer*, 783 A.2d 815, 821 (Pa. Super. 2001).
22. It must be noted that the discovery rule issue was not previously asserted before the trial court, and was waived before the Superior Court. Superior Ct. op. p. 5-6.
23. *Dalrymple v. Brown*, 549 Pa. 217, 223, 701 A.2d 164, 167 (1997)
24. *Id.* (citation omitted).
25. *Id.*
26. *Baumgart v. Keene Bldg. Prods. Corp.*, 468 A.2d 468, 471 (Pa. 1983).

The standard of reasonable diligence is an objective one [], although it is flexible enough to consider a person's capacity to meet certain situations. "If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." In short, we must inquire whether [Plaintiff] "exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests."[27]

The precise "injury" at issue here is CCI's claim that Sassa: negligently failed to secure property damage coverage on the video if it should happen to be outside of the van when it was destroyed; and negligently failed to secure loss of income coverage for loss of use of the video equipment, again no matter where it was when the equipment was destroyed. As will be discussed, *infra*, it is my ruling, as a matter of law, that CCI cannot meet its burden to demonstrate it could not, upon reasonable investigation, ascertain that these two coverages were not present in the policy.

Here, Selinger, CCI's president, re-testified on March 4, 2013, that he reviewed the policy, at the latest, within days of the fire with both John Geraldi (Sassa's principal) and Michael Hagan (Employer's adjustor).

Q: ... Now, at your — I think you said there was another meeting with John and then Mike as well probably still *within a week or so of the fire*. Correct?

A: Correct.

Q: And at that point, you had the policy ... Is that

---

27. *Cooper v. Sirota*, 37 F. App'x 46, 49 (3d Cir. 2002) (citations omitted).

correct?

A: Correct, I mean, most of the discussions, John was really helping Mike Hagan, you know, understand some of the coverages and they were both searching, okay, is this covered and they would go through and they would look at it and so forth and so on.

Q: So that was at one of your initial meetings with you, John and Mike, that they were looking in the policy to see what coverages were there and where things might fall. Correct?

A: Correct.

Q: Did any other meetings take place over the course of the adjusting, including John, Mike and yourself, possibly your son, were reconvening to vet out coverages under the policy?

A: I don't know how many times it happened, but it was *at least six to eight meetings* where we were all together....[28]

As noted above, Selinger testified that after the fire, six to eight meetings took place to discuss coverages available under the Policy and adjustment of the loss:

Q: You testified earlier that at probably your initial meeting with John and Mike Hagan within the week of the fire, you had the policy in front of you and at various points Mike and John were going through the policy trying to determine what coverages were. Correct?

A: Correct.

---

28. Selinger dep. 23:16-24:23; Mar. 4, 2013 (emphasis added).

Q: Is that something that happened on an ongoing basis where they would be looking back to the policy to see what coverages you had and where things could fall?

A: Correct....[29]

Additionally, as Sassa had been CCI's insurance agent since 2000, Selinger testified that John Geraldi did a yearly summary of coverages each year, including 2007, the year of the fire. Further, from 2000 through 2007, CCI reviewed its insurance coverages with Geraldi at least once and usually twice a year, summarizing what the coverages were:

Q: At your last deposition you were asked whether John at these yearly meetings would actually have something in writing called summary of insurance coverages. I think you just testified to that. But would he also, in addition to speaking to you, have something in writing that showed you what those coverages were at those meetings?

A: What the previous year coverages were? Yes.

Q: I think you testified earlier that after the policy went into effect, whatever you agreed upon at that meeting or thereafter, he would come back with a similar document or mail it to you, whichever the case may be, which outlined what your coverages were. Correct?

A: Correct.

Q: And that was the case pretty much from the year 2000 up until you no longer used him in your insurance needs post fire. Correct?

---

29. Selinger dep. 24:14-23; 30:15-33:2; 53:13-20; 61:3-62:14.

A: Correct.[30]

It is *undisputed* that the policy, issued in July 2007, did not contain business income coverage (other than coverage for lost rental income of the building), nor had any of the previous policies purchased from Sassa.[31] CCI did not, despite three amended complaints, ever allege a claim against Sassa. Instead, CCI indicated that CCI's position was that the loss should have been covered under the auto policy.[32]

The evidence clearly shows that CCI reviewed, with professional assistance, the entire Policy to determine what coverages existed both within a week of the fire, as well as six to eight times within three months of the fire to determine coverage:

Q: If John had participated in, I think your testimony was, six to eight meetings or so, do you know how many of those roughly were in 2007? That would be the last three years of the calendar year where the fire occurred.

A: Three months.

Q: Three months, sorry.

A: He definitely was involved in six to eight meetings in that calendar year.

…

Q: You testified earlier that at probably your initial meeting with John and Mike Hagan within the week

30. Selinger dep. 31:16-33:15.
31. Sassa mot. summ. j. ¶25-26.
32. Selinger dep. 62:15-21.

of the fire, you had the policy in front of you and at various points Mike and John were going through the policy trying to determine what the coverages were. Correct?

A: Correct.[33]

In *Cooper*, the Third Circuit affirmed that the statute of limitations expired on a breach of contract, professional negligence, and negligent misrepresentation claims, where the plaintiff had failed to explain why she, as a reasonably diligent professional, failed to use reasonable diligence in not reading the terms of her policy.[34] Here, in fact, CCI's president reviewed the policy within a week of the fire with representatives of both Employers and Sassa, and again six to eight times thereafter in the next three months. The policy has no coverage for business lost income.

Despite Selinger's "assumption"[35] that there was business interruption insurance included in the policy, or that he "expected"[36] there to be so, this mistake or misunderstanding may not indefinitely toll the statute of limitations.[37] CCI has not explained what, despite reasonable diligence and assistance of the multiple professionals it consulted, should have tolled the statute of limitations, where the policy was clearly reviewed within days of the fire to determine what was covered.

The only possible fact disclosed at the Selinger's deposition to support the assertion he truly did not, and could not have known there was a problem, was that Mike

33. Selinger dep. 29:22-30:22.
34. *Cooper*, 37 Fed. App'x at 49.
35. Selinger dep. 53:6-19.
36. Selinger dep. 61:21-62:7.
37. *See Pocono Int'l Raceway v. Pocono Produce Inc.*, 468 A.3d 468, 471 (Pa. 1983).

Hagan said to Selinger, "you're going to get full coverage because you have a total loss."[38] Such a statement was indeed literally true, as to the building, because the building was a total loss, and the policy limits on the building were paid out. The "reasonably diligent" businessman should not reasonably assume that the limits on the auto portion of the policy were also going to be tendered when the van itself is not, at all, involved in any loss. Selinger testified:

> Q: After the fire, you testified that Mr. Geraldi participated in six to eight meetings with you, some of which — at some of which you went over the policy and discussed what you were eligible for and what you had to do. Correct?

> A: Correct.

> Q: And at any point during those meetings, and I'll ask the same question for those meetings, did he represent to you specifically that a business income claim should be covered under the auto portion of the policy?

> A: I don't know if he specifically mentioned under the auto part of the policy, but he certainly indicated that we would be covered for some of the interruption that we were experiencing.[39]

Selinger was not affirmatively mislead, nor does CCI assert as such.

In Judge Bernstein's opinion to the Superior Court on April 11, 2013, it was stated that plaintiff's first-party insurance claim became knowable on August 23, 2007, the date of the fire.[40] The Superior Court noted that

---

38. Selinger dep. 25:24-25.
39. Selinger dep. 61:3-20.
40. J. Bernstein op. Apr. 11, 2013, p.2.

"[CCI] may, at the time of the fire, have a good faith basis upon which to believe that it purchased the appropriate insurance. Thus, the mere occurrence of an event for which insurance coverage is sought, was not evidence that claimant was aware that the sought after coverage was not in place."[41] It clear now, through additional discovery, that CCI was not affirmatively mislead, and there could be no good faith basis for CCI to believe it purchased the insurance it "assumed" it had.

CCI's first-party insurance claim became knowable by the end of calendar year 2007, and certainly within a year of the fire and before August 27, 2008. CCI's president acknowledges that the policy was reviewed in detail with him six to eight times at least three months after the fire, and does not testify that he was assured his damaged would be covered under the auto portion of the policy.

What is remarkable about this case is that CCI transferred the $300,000 limits of coverage on the Isuzu Truck to be the limits on the Dodge Van when the equipment was to be removed from the Isuzu and to be installed into the Dodge. This was done on July 17, 2007, within six weeks of the fire. One purpose was to provide added coverage for the expensive video equipment, which would now be located in the Dodge (a purpose known to both parties). And, according to CCI, another purpose was to provide added coverage to include loss of income due to any loss of use of the video equipment. The loss occurred *not* because there was any loss to the Dodge, but because the equipment was sitting in a building before it could be installed in the Dodge. This scenario cries out for a duty on the insured to investigate appropriate coverage.

---

41. Superior Ct. op. p.7.

Not only was the equipment outside the automobile at the time of the loss, but facially in the policy itself, there was not coverage for business income coverage loss of income — other coverage for lost rental income to the *building*.

There was extensive discussion about the issues of coverage, and nowhere is it averred or established that Sassa lied to or mislead CCI to an extent where the statute of limitations could have been tolled beyond the end of 2007. As such, the negligence claim was instituted outside of the statute of limitations.

## CONCLUSION

In conclusion, as the discovery rule did not toll the statute of limitations beyond 2007, the statute of limitations ran before the joining of Sass, and summary judgment is entered in favor of additional defendant The Richard F. Sassa Insurance Agency, Inc.